1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   JOE S. DEJESUS,                          Case No. 1:23-cv-01096-KES-EPG (PC)

11                    Plaintiff,              ORDER VACATING PREVIOUS
                                              FINDINGS AND RECOMMENDATIONS
12    v.
                                              (ECF NO. 17)
13   J. ROMERO et al.,
                                              ORDER DENYING PLAINTIFF'S MOTION
14                    Defendants.             TO APPOINT COUNSEL

15                                            (ECF NO. 14)

16                                            AND

17                                            FINDINGS AND RECOMMENDATIONS
                                              TO DISMISS THIS ACTION FOR FAILURE
18                                            TO STATE A CLAIM WITHOUT LEAVE
                                              TO AMEND
19
                                              (ECF Nos. 1, 18)
20
                                              OBJECTIONS, IF ANY, DUE WITHIN
21                                            THIRTY DAYS

22
          Plaintiff Joe S. Dejesus is a state prisoner proceeding *pro se* and *in forma pauperis* in
23
this civil rights action filed pursuant to 42 U.S.C. § 1983. For reasons stated below, the Court
24
vacates its previous Findings and Recommendations, denies Plaintiff's motion to appoint
25
counsel, and recommends that this case be dismissed with prejudice for failure to state a claim
26
without further leave to amend.
27
28

                                              1

Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

## I.       BACKGROUND

Plaintiff filed the complaint commencing this action on July 21, 2023. (ECF No. 1). Plaintiff's complaint set forth a series of disagreements with correctional officer J. Romero at Pleasant Valley State Prison (PVSP) regarding Plaintiff's rights and obligations when issued a cane and ADA vest, resulting in Romero issuing Plaintiff multiple Rule Violation Reports (RVRs). (*See* Screening Order, ECF No. 13 at 3–8, summarizing Plaintiff's complaint). The events alleged in the complaint span over the summer and fall of 2022. (*Id.*) Plaintiff asserted claims for retaliation in violation of the First Amendment, conspiracy in adjudicating RVRs, lack of due process in disciplinary hearings, and deliberate indifference to serious medical needs. (Id. at 8).

On February 6, 2024, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 13). The Court provided Plaintiff with applicable legal standards, explained why the complaint failed to state any cognizable claims, and gave Plaintiff thirty days to either file a first amended complaint or notify the Court in writing that he wanted to stand on his complaint. (*Id.* at 2, 17).

After receiving the Court's screening order, Plaintiff filed a notice on February 29, 2024, that he wished to stand on his complaint, which included a motion to appoint counsel. (ECF No. 14). Accordingly, on March 15, 2024, the Court issued Findings and Recommendations to dismiss this action for failure to state a claim. (ECF No. 17).

Then on April 2, 2024, Plaintiff filed First Amended Complaint (FAC). (ECF No. 18). In this complaint, Plaintiff does not name correctional officer Romero as a defendant—or mention him at all—but instead, names as a defendant correctional officer Devilla. (*Id.* at 2). The allegations in this new complaint relate to a single incident that occurred on January 16, 2023. (*Id.* at 3). Plaintiff alleges that on that day, Devilla delayed his nebulizer treatment: instead of letting Plaintiff out of his cell immediately at 11:30 am to go to medical, Devilla told

Plaintiff that medical was in a meeting. As a result, Plaintiff was not able to go for his nebulizer treatment until "yard and pill call" at 1:00 pm. (*Id.* at 3–5, 7).

In light of Plaintiff's filing of a First Amended Complaint after the Court's previous Findings and Recommendations, the Court vacates its previous Findings and Recommendations and issues this order to address the original complaint as well as Plaintiff's proposed amended complaint. As described below, the Court finds that Plaintiff's original complaint fails to state a claim and granting leave to amend would be futile, because the proposed amended complaint also fails to state a claim.

## II.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,

681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III.    SUMMARY OF PLAINTIFF'S COMPLAINT

In his original complaint (ECF No. 1), Plaintiff alleges as follows:

Defendant J. Romero is a Corrections Official for the California Department of Corrections and Rehabilitation ("CDCR"), who was assigned to PVSP. Defendant A. Bustos is a correctional Lieutenant assigned to PVSP.

Romero retaliated against Plaintiff for filing grievances against Romero and "over Plaintiff verbally speaking up for his rights." Romero's retaliation consisted of filing false RVRs, denying Plaintiff the right to use the phone, maliciously destroying Plaintiff's property, arbitrarily forcing Plaintiff to wear an ADA vest in hot weather, interfering with Plaintiff's medical treatment, and making verbal threats to Plaintiff. Additionally, Romero and defendant Bustos conspired to deprive Plaintiff of his constitutional rights, resulting in the loss of 30 days of outdoor exercise for Plaintiff.

On June 5, 2022, Romero ordered Plaintiff to stand for the 5:00 pm standing count. Plaintiff refused on the basis that he is ADA (presumably referring to "Americans with Disability Act") and that his leg was hurting too much to stand. Romero looked at the ADA door tag and walked away.

The next day, on June 6, 2022, Romero stopped Plaintiff from exiting the building for outdoor exercise because Plaintiff did not have his cane with him. Plaintiff said he only used his cane as needed.

The following day, on June 7, 2022, Romero again stopped Plaintiff from exiting the building to attend yard because Plaintiff was not wearing his ADA vest. Romero told Plaintiff he had to wear the ADA vest outside his cell. Plaintiff disagreed and said it was too hot to wear the ADA vest, especially given Plaintiff's lung condition. Plaintiff and Romero then argued

over whether Plaintiff is required to wear an ADA vest at all times, with Plaintiff arguing that PVSP's operational procedures say that a mobility impaired inmate must only *possess* an ADA vest, unless that inmate is confined to a wheelchair or unable to sit on the ground during an emergency alarm. Eventually, Plaintiff put on the vest and went to medical for his lung treatment. Romero moved out of the way without saying anything once Plaintiff put on the ADA vest.

On June 9, 2022, Plaintiff received RVR, which was a "Counseling Chrono," charging Plaintiff with violating California Code of Regulations (CCR) Title 15 § 3013, for "unlawful influence." In that RVR, Romero falsely stated that he had told Plaintiff to put on his vest to attend yard, but in response, Plaintiff attempted to manipulate Romero into not enforcing the ADA rule against Plaintiff. Plaintiff argues that his conduct did not violate the rule against "unlawful influence," which states that "[i]nmates shall not attempt to gain special consideration or favor from other inmates, employees, institution visitors or any other person by the use of bribery, threat or other unlawful means." Plaintiff claims that Romero filed the RVR in retaliation for Plaintiff speaking up for his right not to stand for count, for his right to go to medical without wearing his ADA vest, and his right to be outside in hot weather without his ADA vest on. Plaintiff alleges that Romero filed the RVR to prevent Plaintiff from getting parole at his next hearing.

One week later, Plaintiff filed a grievance against Romero for filing the allegedly false RVR about unlawful influence.

A week or two later, when Romero was escorting Plaintiff to medical, Romero stated "Do not write me up again." Plaintiff responded by filing another grievance against Romero for making a verbal threat against Plaintiff.

In the meantime, Romero was still forcing Plaintiff to wear an ADA vest. On June 23, 2022, Plaintiff went to medical and told the registered nurse that Plaintiff wanted to turn in the vest and the cane. Plaintiff signed a medical refusal document stating that he no longer wanted the cane and the vest. The nurse, however, told Plaintiff he had to keep the cane and vest until the doctor told him to turn them in.

Then, approximately on July 24, 2022, Plaintiff's boss lost Plaintiff's prison ID card. Plaintiff began using his paper picture ID cell door tag as ID. Romero, however, told Plaintiff he could not attend yard without the proper ID. Plaintiff explained that he needed to go to the yard so that he could go to medical for lunch treatment. Romero told Plaintiff to return to his cell because he lacked proper ID.

Back in his cell, Plaintiff found an old prison ID card and began using it to attend yard activities. Romero also allowed Plaintiff to exit the building with the old ID card.

On July 31, 2022, Romero gave Plaintiff his new ID card. Romero then asked Plaintiff for his old card. Romero told Plaintiff inmates are only allowed one ID card and kept Plaintiff's old ID card.

The following day, August 1, 2022, Romero falsified an RVR charging him with another violation of CCR Title 15 § 3013 for "unlawful influence," alleging that Plaintiff attempted to manipulate Romero during the conversation about the ID.

Plaintiff claims that Romero should not have been the one to issue Plaintiff a new ID card, considering the conflict between them. Plaintiff alleges that, according to Romero's training, "Romero was to limit his interactions with Plaintiff and only interact with him when absolutely necessary," and that Romero chose to give him the ID card so he could falsify an RVR against Plaintiff. Plaintiff alleges that Romero filed this RVR against him in retaliation for Plaintiff filing grievances against Romero and for Plaintiff "speaking up for his rights."

In response, Plaintiff filed another grievance on Romero, alleging Romero falsified the RVR 115 in retaliation for Plaintiff's previous grievances and for speaking up verbally for his rights. Plaintiff then told Romero that Plaintiff had filed a grievance against him. Romero responded "with sarcasm," stating that "he welcomes grievances because they are learning experiences."

The following day, Romero would not allow Plaintiff to sign up for telephone. Ordinarily, floor officers would do phone sign ups from 2:30–4:30, but would not actually turn in the sign-up sheet until 6:30 pm. When Plaintiff tried to sign up for telephone at 3:30 pm, Romero falsely stated that sign-ups were over and that he had already turned in the sign-up

sheet. However, Plaintiff learned from other inmates that the phone sig-un sheet had not been turned in until 6:30 pm. As a result, Plaintiff missed his regular 10:00 am call on the following day.

On October 4, 2022, Plaintiff was exiting the building for lunch and was carrying his ADA vest in his hand. Plaintiff eventually put the vest on with some difficulty while Romero and other inmates laughed at him. Later that day, Plaintiff spoke with Sergeant Perez about Romero's harassment about the ADA vest. Sergeant Perez asked to speak with Romero and "told off Romero in a loud, aggressive and belittling fashion . . . to stop harassing Plaintiff over the F-ing vest, and that he's F-ing tired of hearing about the vest." Romero responded "Yes, sir," and Sergeant Perez left the building.

However, two days later, on October 6, 2022, Plaintiff went to medical and just left his vest and cane at medical. Sergeant Clark brought the vest back to Plaintiff and persuaded Plaintiff to accept the vest and cane until the doctor came to pick them up. Sergeant Clark then went to talk to Romero in private. After the meeting, Romero told Plaintiff that he had to wear the vest and they argued about what Sergeant Clark had told each of them about the need for Plaintiff to wear his ADA vest.

On October 11, 2022, Plaintiff went to medical to drop off the vest and cane. Plaintiff signed a document that he no longer wanted the vest and cane. The nurse again told him to hold onto the vest and cane until the doctor took them. The nurse told Plaintiff he did not need to wear the vest anymore, but when he returned to the building, Romero told Plaintiff that until medical tells him he no longer needs to wear the vest, that he must still wear the vest.

Romero then told Mr. Navarro, from the ADA office, and Assistant Warden Ms. Barker about Plaintiff not wearing the ADA vest. They spoke outside of Plaintiff's presence. After the conversation, Mr. Navarro spoke with Plaintiff "telling Plaintiff that he's a F-ing grown man and that he needs to F-ing learn how to follow the rules and that until he's ready to f-ing follow the rules that then he'll talk with Plaintiff." Ms. Barker asked Plaintiff if he would like to move to another building, and that she could move him if he would like. Plaintiff declined. Ms. Barker told Plaintiff to let her know if he should change his mind. Plaintiff also tried to

7

speak with Sergeant Perez about how Romero was still making him wear the vest, and Perez "told Plaintiff he had to wear the vest now, that medical told him that he needs to wear the vest." Plaintiff told Perez that the day before, he signed medical papers refusing the cane and vest and that medical told him he no longer had to wear the vest. Perez said that if Plaintiff still had the cane and vest then he had to wear the vest. Plaintiff believes Perez was lying about what medical told him.

When Plaintiff returned to the building, Romero told Plaintiff he had to wear the vest. Plaintiff argued that there will still hot days in October. Romero said "Look! I'm telling you, you have to wear it!"

Later that day, Romero gave Plaintiff three pieces of paper from PVSP's Operational Procedure (OP), with highlighted rules about wearing the vest. Plaintiff says that the rules indicated that Plaintiff merely had to possess the vest when out of his cell, not wear it at all times.

On October 20, 2022, Plaintiff received another RVR alleging that Plaintiff failed to wear his vest the previous day. The RVR also charged Plaintiff with disobeying a direct order because he had already been counseled to wear his vest.

The following day, Romero told Plaintiff to turn in his ADA cane and vest to medical.

When Plaintiff returned to the building, there was another RVR dated October 21, 2022 regarding an incident on October 12, 2022 where Plaintiff did not wear his best. That RVR also alleged that Plaintiff had disobeyed a direct order. Plaintiff alleges there was no reason for this separate RVR given that they were the same charges as another RVR.

Plaintiff filed a grievance against Romero for the two RVRs, claiming that they were in retaliation for Plaintiff's previous grievances against Romero.

On November 23, 2022, Romero went into Plaintiff's cell on the guise of conducting a random cell search, and damaged Plaintiff's audio amplifier, which is called a Boostaroo. Romero violated the rule to leave the cell in good order following a search, and not to use searches as forms of punishment. Plaintiff also claims that, given the conflicts between them, Romero should not have done the cell search.

On December 12, 2022, Plaintiff submitted another grievance against Romero over the damaged Boostaroo.

Sometime later in December 2022 or early January 2023, Romero held out a piece of mail to Plaintiff. When Plaintiff grabbed the mail, Romero pulled it back. Romero looked at Plaintiff through the side of the door in a negative and hostile way. Romero stated "This better not be a grievance over your Boostaroo." Romero then released the mail, which was in fact a grievance regarding the Boostaroo.

Plaintiff alleges that Romero and Defendant Bustos conspired to find him guilty on the charge of attempting to manipulate him into not enforcing the prison ID card standard. There was no evidence of this allegation. As a result of this guilty finding, Plaintiff lost 30 days of yard.

On February 11, 2023, Plaintiff had bad chest pains that required emergency treatment. This happened again on March 2, 2023. Plaintiff believes these attacks were brought on by the ongoing and constant stress as a result of Romero's retaliation. Romero knew that Plaintiff and inmates find the ADA vest degrading and humiliating and that was why Romero wanted Plaintiff to wear the vest.

Plaintiff brings claims for retaliation under the First Amendment for filing grievances, conspiracy, lack of due process, and deliberate indifference to serious medical needs. Plaintiff asks for an injunction ordering Defendants to remove the RVR from Plaintiff's file, in addition to monetary damages.

## IV.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

9

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B.    First Amendment Retaliation

Plaintiff's first cause of action claims that Defendant Romero violated his First Amendment right by retaliating against him for filing grievances by filing three false RVRs, denying Plaintiff access to the yard, denying Plaintiff access to the phone, unlawfully searching Plaintiff's cell, forcing Plaintiff to wear an ADA vest, interfering with medical treatment, and making verbal threats against Plaintiff.

A viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

The Court finds that Plaintiff's allegations, even if true, do not set forth a claim for retaliation in violation of the First Amendment.

Although Plaintiff repeatedly states that Defendant Romero took actions against him because Plaintiff filed grievances against Romero, Plaintiff's facts do not indicate this. Instead, Plaintiff's facts, even if true, demonstrate that Defendant Romero acted in response to Plaintiff not obeying Romero's orders to stand up and to wear his ADA vest, rather than to retaliate against Plaintiff for filing grievances.

This is borne-out by Plaintiff's timeline of events. Plaintiff's narrative begins with the events of June 5, 2002, when Romero ordered Plaintiff to stand for the 5:00 pm standing count and Plaintiff refused to do so due to his ADA status. Plaintiff does not allege that Plaintiff had filed a grievance against Romero before this incident, nor that Romero said or did anything to indicate that Romero was acting in retaliation against Plaintiff due to an inmate grievance.

The next event Plaintiff describes is on June 6, 2022, when Romero stopped Plaintiff from exiting the building, asking Plaintiff where his cane was and why he was not using it. Plaintiff responded that he only uses the cane as needed. Again, Plaintiff does not allege that he had a pending grievance against Romero at this time, or that Romero said or did anything tying this action to Plaintiff's filing of a grievance.

Plaintiff then alleges that, on the following day, Romero prevented Plaintiff from exiting the building because Plaintiff was not wearing his ADA vest. At that time, Romero allegedly told Plaintiff that he had to wear the ADA vest to attend yard. Plaintiff describes a lengthy argument with Romero about whether the rules required Plaintiff to wear his ADA vest outside his cell. Plaintiff ultimately agreed to wear his ADA vest and was allowed to exit the building. Again, there are no allegations that Plaintiff had a pending grievance at this time, that Romero knew about a grievance, or that Romero said or did anything tying this incident to a previous grievance. On the contrary, it appears Romero acted based on his belief, correct or not, that the rules required Plaintiff to wear his ADA vest.

Indeed, Plaintiff first alleges that he filed a grievance against Romero after these incidents and also after Romero had filed an RVR against Plaintiff charging Plaintiff with

unlawful influence related to the argument about Plaintiff's ADA vest. This timeline contradicts Plaintiff's claim that Romero took these actions in retaliation against Plaintiff for filing a grievance against Romero.

Plaintiff's complaint thus fails to state a cognizable claim for retaliation under the First Amendment against Romero.

### C.    Due Process Violation

Plaintiff's third cause of action asserts a claim for violation of the 14th Amendment's due process clause.[1]

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Additionally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum procedural protections prison officials must provide an inmate facing disciplinary charges are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; (3) the right for the inmate to call witnesses and present documentary evidence, unless doing so would be

---

[1] The Court addresses this claim next, before addressing the claim for conspiracy that is alleged second in Plaintiff's complaint, because the cause of action for conspiracy refers to an agreement to violate Plaintiff's Fourteenth Amendment rights.

1    unduly hazardous to institutional safety or correctional goals; and (4) assistance where the

2    issues presented are complex or the inmate is illiterate. *See Wolff*, 418 U.S. at 564–70. "Some

3    evidence" must also support the hearing officer's decision, and the evidence must have some

4    indicia of reliability. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *accord Cato v. Rushen*,

5    824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is minimally stringent, and

6    the relevant inquiry is whether "there is any evidence in the record that could support the

7    conclusion reached." *Hill*, 472 U.S. at 455–56.

8         These protections "adhere only when the disciplinary action implicates a protected

9    liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on

10   the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d

11   1071, 1078 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 484).

12        Here, Plaintiff alleges that he lost his outdoor yard for 30 days. However, this

13   deprivation is not so severe as to constitute an atypical condition of confinement such that

14   Plaintiff is constitutionally required to receive due process. *See Crisp v. Duffy*, No. 2:16-CV-

15   0288 DB P, 2017 WL 3284809, at *5 (E.D. Cal., Aug. 2, 2017) (finding no due process claim

16   where "Plaintiff states that he was assessed a 90-day loss of privileges ("LOP"), which

17   included the loss of visitation, loss of some yard privileges, [and] loss of dayroom, canteen

18   restrictions"); *Van Mathis v. Graber*, No. C 07–3498WHAR, 2008 WL 912932, at *2 (N.D.

19   Cal., Apr. 3, 2008) ("The only punishment imposed was a twenty-one day loss of privileges.

20   This is not sufficient to constitute an atypical condition of confinement, and thus plaintiff had

21   no due process rights in connection with the hearing."); *Pratt v. Hedrick,* No. C 13–4557 SI

22   (PR), 2014 WL 280626, at *3 (N.D. Cal., Jan. 24, 2014) ("The only discipline Pratt identifies is

23   the 30 days loss-of-privileges status on the June 18, 2013 battery offense, but that alone does

24   not amount to an atypical and significant hardship under *Sandin* so as to trigger any need for

25   procedural protections under the federal constitution.").

26        Additionally, Plaintiff does not allege that the RVR disciplinary hearing lacked any of

27   the procedural protections set forth in *Wolff*. Instead, Plaintiff claims that the RVR guilty

28   finding was not supported by any evidence. However, Plaintiff alleges that he received a

1   written disposition that stated the guilty finding was based on Romero's RVR. Moreover,

2   Plaintiff describes the RVRs as setting forth Romero's account of interactions with Plaintiff, in

3   which Plaintiff argued against wearing his ADA vest and giving up his old ID. While Plaintiff

4   appears to argue that the guilty finding was wrong because he believes his interactions with

5   Romero did not rise to the level of disobeying an order or unlawfully influencing a corrections

6   officer, the fact remains that the written decision identified some evidence in support of the

7   finding of guilt.

8       Plaintiff's complaint thus fails to state a cognizable claim for violation of due process.

9       **D.     Conspiracy**

10       Plaintiff's next cause of action is for conspiracy. Plaintiff claims that Defendants

11   Romero and Bustos conspired to deprive Plaintiff of his constitutional rights in that Defendant

12   Bustos agreed to find Plaintiff guilty of Romero's RVR even though there was not evidence to

13   support it.

14       To state a claim for conspiracy under 42 U.S.C. § 1983, plaintiff must plead specific

15   facts showing an agreement or meeting of minds between the defendants to violate his

16   constitutional rights. *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir.

17   1989). Plaintiff must also show how an actual deprivation of his constitutional rights resulted

18   from the alleged conspiracy. *Id.* "'To be liable, each participant in the conspiracy need not

19   know the exact details of the plan, but each participant must at least share the common

20   objective of the conspiracy.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.

21   2002) (quoting *United Steel Workers of Am. V. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th

22   Cir. 1989)).

23       Here, Plaintiff's complaint fails to state a claim for conspiracy because Plaintiff has not

24   alleged an underlying violation of his constitutional rights for the reasons stated above, and also

25   because Plaintiff has not pled facts indicating that there was an agreement or meeting of the

26   mind between Romero and Bustos to deprive Plaintiff of his rights. Although Plaintiff claims

27   that the RVR was not supported by the evidence, Plaintiff does not allege any facts that indicate

28

a specific agreement between Romero and Bustos to find Plaintiff guilty without evidence or otherwise deprive Plaintiff of his constitutional rights.

### E.        Cruel and Unusual Punishment

Plaintiff's final cause of action asserts a claim for cruel and unusual punishment based on deliberate indifference to Plaintiff's mental, emotional, and physical well-being. Plaintiff alleges that Defendants Romero and Bustos were deliberately indifferent to the stress they were causing upon Plaintiff through issuing the RVRs, forcing Plaintiff to wear his ADA vest, and denying Plaintiff exercise privileges for 30 days.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing *Estelle,* 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* at 1059 (quoting *Hutchinson v. United States,* 838 F.2d 390, 392 (9th Cir. 1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (citing *Estelle,* 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment

of the prisoner [it] ordinarily militates against a finding of deliberate

indifference." *Id.* (citations omitted).

Plaintiff fails to allege a cognizable claim under these standards. Plaintiff does not allege that he had a condition that required medical treatment, nor that Romero and Bustos failed to treat such condition. Instead, Plaintiff appears to allege that Romero and Bustos' actions in issuing RVRs and assessing a loss of privileges from the resulting guilty findings caused him stress. But having stress as a consequence of prison discipline is not the same as a medical condition that Defendants had an obligation to treat. Plaintiff thus fails to identify a medical condition requiring treatment, nor a purposeful failure by Defendants Romero and Bustos to treat such a medical condition.

In sum, Plaintiff's complaint fails to state any cognizable claim against any defendant.

## V.     LEAVE TO AMEND

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." However, the Court has discretion to deny leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts" or is otherwise futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). A proposed amended complaint is futile if it would be immediately subject to dismissal. *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir.2011).

The Court's review of Plaintiff's First Amended Complaint (ECF No. 18), shows that granting further leave to amend would be futile because Plaintiff's FAC does not cure deficiencies in the original complaint and also fails to state a cognizable claim against any defendant.

As the Court informed Plaintiff in its Screening Order, "although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints)." (ECF No. 13 at 16). "[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the

amended pleading should be dismissed or stricken." *Lake v. City of Vallejo*, No. 2:19-CV-01439-DAD-KJN, 2023 WL 5629233, at *2 (E.D. Cal. Aug. 31, 2023) (quoting *Ketab Corp. v. Mesriani & Assocs.*, No. 2:14-cv-07241-RSWL-MRW, 2015 WL 8022874, at *8 (C.D. Cal. Dec. 4, 2015)). The rule that unrelated claims that involve different defendants must be brought in separate lawsuits is intended "to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Diaz v. CDCR*, No. 1:23-CV-01378-SAB-PC, 2024 WL 308246, at *2 (E.D. Cal. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 732023 (E.D. Cal. Feb. 22, 2024) (citing *George*, 507 F.3d at 607).

Here, the Court granted Plaintiff leave to amend his complaint to cure deficiencies in his claims against Defendant Romero, and "not for the purpose of changing the nature of this suit or adding unrelated claims." (ECF No. 13 at 16). Plaintiff's allegations in his FAC, however, concern a different defendant and a different incident that are entirely unrelated to the events described in Plaintiff's original complaint. Whereas in his original complaint, Plaintiff described a series of disagreements with Romero regarding Plaintiff's rights and obligations when issued a cane and ADA vest, resulting in Romero issuing Plaintiff multiple RVRs in the summer and fall of 2022, in his FAC, Plaintiff alleges that on January 16, 2023, Devilla delayed Plaintiff's nebulizer treatment. There is no overlap in parties or claims between the two complaints. Allegations made in the amended complaint in no way cure the deficiencies in the original complaint. Such unrelated claims that involve different defendants must be brought in separate lawsuits; otherwise, Plaintiff would be circumventing the limitations PLRA imposes on incarcerated plaintiffs as well as paying the filing fees required by the rules of this Court.

Moreover, granting leave to amend would be futile because Plaintiff's FAC fails to state a claim. Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive* risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

Plaintiff's FAC contains no allegations that Devilla knew that delaying nebulizer treatment by about an hour constituted an excessive risk to Plaintiff's health and safety, and deliberately disregarded that risk. In fact, Plaintiff has not explained what risk, if any, does an hour-long delay represent to his health, nor that Devilla knew of any risk. Further, it does not appear that Plaintiff suffered any harm from the delay. Without these allegations, Devilla's conduct cannot constitute deliberate indifference. *Toguchi*, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment.") (citation omitted); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990) (stating that even gross negligence is insufficient to establish a constitutional violation).

For these reasons, the Court concludes that granting Plaintiff further leave to amend would be futile.

## VI.    MOTION TO APPOINT COUNSEL

Plaintiff asks for "a[n] attorney for help" because he "is not familiar with legal law but strongly affirms the factual merits of his complaint." (ECF No. 14 at 1). In addition, he states that he has "difficulty understanding case laws, federal court rules etc." and that the law library is open only one day a week, and that's only *if* the librarian shows up. (*Id.* at 2). Plaintiff argues that he "had help nine months ago;" but now Plaintiff is at another facility and is "up for transfer again," and, therefore, asks for counsel. (*Id.*)

Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn in part on other grounds*, 154 F.3d

952 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (citation and internal quotation marks omitted).

The Court has reviewed the record in this case and is recommending that this case be dismissed because Plaintiff has failed to state a claim. Moreover, while Plaintiff has failed to state any cognizable claim, it is not apparent that such failure is due to his inability to articulate his claims as opposed to the lack of merit in his claims. Accordingly, the Court denies Plaintiff's motion to appoint counsel.

## VII.   CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint (ECF No. 1) fails to state any cognizable claims. The Court previously provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file an amended complaint, but Plaintiff chose to stand on his original complaint. Based on the review of the subsequently filed First Amended Complaint (ECF No. 18), the Court also finds that granting further leave to amend would be futile. In addition, Plaintiff failed to demonstrate exceptional circumstances that warrant appointment of pro bono counsel.

Based on the foregoing, **IT IS ORDERED** that:

  1.   The Court's Findings and Recommendations (ECF No. 17) are **VACATED**;

  2.   Plaintiff's motion to appoint counsel (ECF No. 14) is **DENIED**.

And it is **RECOMMENDED** that:

  3.   This action be **DISMISSED** with prejudice for failure to state a claim; and

  4.   The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days (30) after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __April 16, 2024__                    ___/s/ Erica P. Grosjean___

UNITED STATES MAGISTRATE JUDGE